**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EDWIN ANDRES PENA,         :
                                 : Civil Action No. 12-846 (SDW)
               Petitioner,    :
                                 :
               v.            :     **OPINION**
                                 :
UNITED STATES,           :     **September 4, 2014**
                                 :
              Respondent.    :

**WIGENTON**, District Judge

Before the Court is Petitioner Edwin Andres Pena's ("Petitioner" or "Pena") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion"). The Government filed an Answer to Petitioner's Motion on March 19, 2013. (ECF No. 12.) For the reasons stated below, this Court DENIES Petitioner's Motion and DECLINES to issue a certificate of appealability.

### FACTUAL AND PROCEDURAL HISTORY

In June 2006, Pena was arrested in Miami, Florida, pursuant to a sealed criminal complaint charging Pena with two counts of wire fraud relating to a scheme to secretly hack protected computers and voice over internet protocol ("VoIP") telecom providers, in order to route VoIP calls of Pena's telecom customers. *See United States v. Pena*, No. 2:09-cr-00103 (SDW) (ECF No. 1). On June 29, 2006, Pena appeared before the Honorable Madeline C. Arleo, U.S.M.J., for an initial appearance and bail hearing, and was released that day on a $100,000 bond secured by available equity in two Florida properties. (*Id*. at ECF No. 4.) Also on June 29, 2006, an Order

for Continuance for 90 days was entered to allow the Government and Pena to conduct plea negotiations. (*Id.*, ECF No. 9.) Apparently, on July 18, 2006, a proposed plea agreement was sent to Pena's counsel by the Government, which was conditioned upon Pena's entry of a guilty plea to conspiracy to commit unauthorized access to a protected computer, contrary to 18 U.S.C. § 1030(a)(4), in violation of 18 U.S.C. § 371. (Pet. Exhibit 1, July 18, 2006 Plea Agreement at ECF No. 4.) However, sometime after he was released on bail, Pena fled the country. An arrest warrant was then issued for Pena on August 14, 2006. *See United States v. Pena*, No. 2:09-cr-00103 (SDW) (ECF Nos. 10, 11).

Two and a half years later, on February 17, 2009, a new, enhanced 20-count Indictment was issued in the United States District Court for the District Court of New Jersey, charging Pena with multiple counts of wire fraud and unauthorized access to computers in violation of 18 U.S.C. §§ 371, 1030, 1343 and 2, as follows: (Count 1) conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371; (Counts 2 through 11) wire fraud, in violation of 18 U.S.C. § 1343; and (Counts 12 through 20) computer fraud and abuse, in violation of 18 U.S.C. § 1030. Specifically, the Indictment charged that from November 2004 through May 2006, Pena devised a scheme whereby he and Robert Moore and others would sell VoIP telephone service to telecommunications companies ("Telecom Customers") and then surreptitiously hack into the protected computer networks of VoIP Telecom Providers to route the VoIP calls of the Telecom Customers without paying the VoIP Telecom Providers for their service. Pena then did commit wire fraud and computer fraud and abuse by routing VoIP calls via VoIP Telecom Providers by hacking into the protected computer networks of various VoIP Telecom Providers for a period of time from July 25, 2005 through May 3, 2006. (*Id.*, ECF No. 14 – Indictment.)

2

Soon after the new 20-Count Indictment was issued, Pena was arrested and returned to this District Court.  Pena was ordered detained without bail on October 16, 2009.  (*Id*., ECF No. 17.)  On November 4, 2009, an Order of Continuance for 60 days was entered to allow the Government and Pena to conduct plea negotiations.  (*Id*., ECF No. 22.)

On February 3, 2010, Pena pled guilty before this Court to Count 1 and Count 3 of the Indictment.  (*Id*., ECF No. 25.)  In particular, Pena signed and filed an Application for Permission to Enter a Plea of Guilty, (*Id*. at ECF No. 26), referencing the Plea Agreement, (*Id*. at ECF No. 27), in which he agreed to plead guilty to Counts 1 and 3 of the Indictment.  The Plea Agreement set forth the statutory maximum penalties for each offense.  Specifically, the agreement stated that a violation of 18 U.S.C. § 371 carried a statutory maximum penalty of five years imprisonment and a statutory maximum fine equal to the greatest of $ 250,000, twice the gross amount of any pecuniary gain that the person derived from the offense, or twice the gross amount of any pecuniary loss sustained by any victims of the offense.  (*Id*., ECF No. 27 at 2.)  A violation of 18 U.S.C. § 1343 carried a statutory penalty of twenty years in prison and a statutory maximum fine equal to the greatest of $ 250,000, twice the gross amount of any pecuniary gain that the person derived from the offense, or twice the gross amount of any pecuniary loss sustained by any victims of the offense.  (*Id*.)

The Plea Agreement also confirmed that the sentence to be imposed on Pena was "within the sole discretion of the sentencing judge" and that the judge could impose "the statutory maximum term of imprisonment and the maximum statutory fine."  (*Id*.)   Moreover, the Plea Agreement specified certain stipulations to which both Pena and the Government consented, as follows:

This Office and Edwin Pena agree to stipulate at sentencing to the statements set forth in the attach Schedule A, which hereby is made a part of this plea agreement.  This agreement to stipulate, however, cannot and does not bind the sentencing judge, who may make independent factual finding and may reject any or all of the stipulations entered into by the parties.  To the extent that the parties do not stipulate to a particular fact or legal conclusion, each reserves the right to argue the existence of and the effect of any such fact or conclusion upon the sentence.  Moreover, this agreement to stipulate on the part of this Office is based on the information and evidence that this office possessed as of the date of this agreement.  Thus, if this Office obtains or receives additional evidence or information prior to sentencing that it determines to be credible and to be materially in conflict with any stipulation in the attached Schedule A, this Office shall not be bound by any such stipulation.  A determination that any stipulation is not binding shall not release either this Office or Edwin Pena from any other portion of this agreement, including any other stipulation.  If the sentencing court rejects a stipulation, both parties reserve the right to argue an appeal or at post-sentencing proceedings that the sentencing court was within its discretion and authority to do so.  These stipulations do not restrict the Government's right to respond to questions from the Court and to correct misinformation that has been provided to the Court.

(*Id*. at 3-4.)

The Plea Agreement also expressly stated:

Edwin Pena agrees to make full restitution for all losses resulting from the offense of conviction or  from the scheme, conspiracy, or pattern of criminal activity underlying that offense, to Net2Phone, Inc., OpHedge Investment Services, LLC, Unified Worldwide Transport, Latinode Communications, Ntera, S&S Communications, Novatel, Calls for Less, VoEX,  Network Management Inc., Multiphone Latin America Inc., RS and Associates International Inc., Go2Tel,   and Next Communications in the amount of $1,041,000.

(*Id*. at 3.)

The plea hearing was held on February 3, 2010.  Pena clearly expressed that he understood the terms of the plea agreement and the consequences of entering a guilty plea.  Pena further stated on the record that he understood he was waiving his right to a jury trial, and both Pena and his counsel signed a Waiver of Appeal.  (ECF 12-5, Feb. 3, 2010 Transcript of Plea Hearing.)

On September 24, 2010, this Court sentenced Pena to an aggregate prison term of 120 months, and ordered that Pena make restitution in the amount of $1,012,311.10, pursuant to the

Mandatory Victims Restitution Act of 1996.  (*United States v. Pena*, No. 2:09-cr-00103 (SDW) at ECF No. 30, Sep. 24, 2010 Judgment.)

On October 1, 2010, Pena filed a Notice of Appeal of his sentence.  On May 17, 2011, the United States Court of Appeals for the Third Circuit granted the Government's motion to enforce the appellate waiver and for summary affirmance.  (*Id*. at ECF No. 44.)  Thereafter, Pena timely filed this § 2255 Motion on February 10, 2012.

Pena raises the following claims for relief.  First, Pena argues that enforcement of his waiver of appeal works a miscarriage of justice because the "baseline offense level applied by the Court was an inaccurate miscalculation and was imposed in 'violation of the law.'"  (ECF No. 1, Motion at 12.)  Second, Pena contends that his counsel was ineffective during the plea process for failure to verify the actual amount of losses and number of victims claimed by the Government because these factors determined the potential sentence and restitution to be imposed.  (*Id*. at 15-18.)  Pena also argues that the restitution award must be vacated because the amount of losses and number of victims were not verified and are in error.  (*Id*. at 18-19.)  Finally, Pena filed an addendum to his § 2255 motion arguing that his counsel was ineffective for failing to inform Pena about the Government's earlier July 18, 2006 plea offer of 60 months imprisonment.  (ECF 4.)

The Government responded to the Motion on March 19, 2013, countering that Petitioner's claims lack merit.  (ECF No. 12, Answer.)  Pena filed a reply on October 15, 2013.  (ECF No. 24.)

## LEGAL STANDARD

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law."  28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief.  *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005).  Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982), *cited in U.S. v. Travillion*, --- F.3d ----, 2014 WL 3029837, *2 (3d Cir. July 7, 2014).

In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record."  *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted).  "It is the policy of the courts to give a liberal construction to pro se habeas petitions."  *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010).  The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.  *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, --- F.Supp.2d ----, 2013 WL 4538293, at * 9 (D.N. J. Aug. 26, 2013) (Simandle, J.) (citing *Booth*, 432 F.3d at 545–46).

**DISCUSSION**

A.  Waiver Issue

Pena's first claim asserts that enforcement of the waiver provisions in his plea agreement works a miscarriage of justice because the "baseline offense level applied by the Court was an inaccurate miscalculation and was imposed in 'violation of the law.'"  (ECF No. 1, Motion at 12.) The Government counters that the waiver was knowing and voluntary and that enforcement of the waiver does not work a miscarriage of justice because Pena stipulated to the loss amount, the Government was able to prove the loss in a variety of ways, and the Court was only required to make a reasonable estimate of the loss.  (ECF No. 12, Answer at 7.)

 "Criminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver."  *U.S. v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) (citations omitted), *cert. denied*, 557 U.S. 903 (2009). Thus, in criminal proceedings, a prisoner's waivers of the right to appeal a conviction or sentence, or to challenge a conviction or sentence collaterally, as through § 2255, will be enforced "provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." *Mabry*, 536 F.3d at 237 (citing *U.S. v. Khattak*, 273 F.3d 557 (3d Cir. 2001) (footnote omitted)).

The "miscarriage of justice" exception is narrow and applies only in "unusual circumstance[s]."  *See Khattak*, 273 F.3d at 562 (citations omitted), *cited in Brown v. Zickefoose*, 531 F. App'x 219, 222 (3d Cir. 2013).  The Court of Appeals for the Third Circuit has declined to earmark specific situations that amount to a miscarriage of justice, but has instead instructed district courts to consider the following factors before relieving a prisoner of a waiver:

> "[T]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result."

*Khattak*, 273 F.3d at 562 (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)).

1. *Knowing and Voluntary Waiver*

In deciding a § 2255 motion, a district court first "has an independent obligation to conduct an evaluation of the validity of a collateral waiver."  *Mabry*, 536 F.3d at 238.  *See also United States v. Jackson*, 523 F.3d 234, 243 (3d Cir. 2008) (directing district courts to evaluate specific terms of the plea agreement and the district court's colloquy during the Rule 11 plea hearing to determine whether the plea was knowing and voluntary).  Rule 11(b)(1) provides:

> Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
> ....
>
> (N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

Fed.R.Crim.P. 11(b)(1)(N).  Rule 11 further states: "Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed.R.Crim.P. 11(b)(2).

The record in this case clearly establishes that this Court complied with the Rule 11 requirements.  During the plea colloquy, this Court confirmed that Petitioner was not misled or coerced into entering into the plea agreement.  (Plea Tr. at 3:7-24.)  Furthermore, this Court explained the waiver provision to Petitioner in detail and ensured that Petitioner understood the terms of the plea agreement, including the waiver of appeal and collateral attack provisions.  (Plea

8

Tr. at 3:25-5:6; 5:7-6:6; 6:24-9:20.)  Specifically, a detailed exchange occurred with respect to waiver of appeal and post-sentencing rights as follows:

> THE COURT:  Now, I want to draw your attention in particular to page 4. There's a section entitled: Waiver of appeal and post-sentencing rights.  You see that section?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: All right. That section cross references Schedule A, which is attached to and made part of your plea agreement.  In particular, on page 9, in paragraph 23.  You see that paragraph?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: That paragraph goes into detail about the circumstances under which you are waiving your right to appeal.  Have you spoken to your attorneys with respect to your right to file an appeal or attack the sentence that the Court imposes in this matter?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: And you do understand that you do have the right to file an appeal, but for the fact that you have agreed in this agreement that you will not file an appeal if certain conditions are met?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: You understand that?  All right.  In particular, it appears that there's an agreement that should I sentence you at a range that falls within or below the Guideline range that results from a total Guidelines offense level of 28 or 30, if I accept the Government's argument as it relates to 3B1.1(c), that you cannot file an appeal.  You understand that?
>
> THE DEFENDANT: I do understand, your Honor.
>
> THE COURT: You do also understand the Government is also waiving its right to file an appeal if I sentence you essentially at a level 28 or higher?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: All right.  Now, as it relates to these numbers that are set forth in your agreement, what you should be mindful of is the fact that you have not met with probation and no final presentence report has been prepared.  So these numbers that are set forth in this agreement are not final numbers at this point because that document has not been completed. You understand that?

9

THE DEFENDANT: We understand, your Honor.

THE COURT: All right.  But in the event that document basically comports with what's set forth in this agreement in terms of your Guidelines offense level, and I sentence you at that level, is it your intention to waive your right to file an appeal, collateral attack, or file any other type of writ or motion as it relates to that sentence?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, paragraph 22 also goes into some additional detail about rights that are being reserved by the Government as it relates to what role you played in this particular conspiracy to which you've entered a plea of guilty.  You understand that?

THE DEFENDANT: I do understand, your Honor.

THE COURT: Okay.  And, once again, if I adopt those arguments, obviously that affects the Guidelines offense level.  More than likely, still stays in that 28 to 30, but I may go higher than that.  You understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And, once again, as set forth in your agreement and as I already indicated to you, any sentence imposed is a sentence I impose within my discretion.   You understand that?

THE DEFENDANT: Yes, your Honor.

(Plea Tr. at 7:6-9:20.)

Based on the above colloquy, this Court finds that the requirements of Rule 11 were scrupulously followed, and that Pena knowingly and voluntarily waived his right to appeal or collaterally attack his sentence.  In addition to the Rule 11 colloquy, this Court further notes that Pena's counsel provided him with a copy of the plea agreement, which Petitioner acknowledged he read and understood.  (Plea Agreement at 6.)

"Plea agreements, although arising in a criminal context, are analyzed under contract law standards."  *United States v. Nolan–Cooper*, 155 F.3d 221, 236 (3d Cir. 1998).  And as contracts, plea agreements, and the waivers contained within, will not lightly be set aside if voluntarily and

knowingly entered into.  *See, e.g., United States v. Castro*, 704 F.3d 125, 135–36 (3d Cir. 2013) (discussing standard for review of plea agreements and appellate waivers).  In this case, the Court finds no evidence to suggest that Pena did not enter into the plea agreement knowingly or voluntarily.  Nor does this Court find any "exceptional circumstances that would justify disregarding [the] terms" of the plea agreement.  *United States v. Yeager*, 351 F. App'x 718, 721 (3d Cir. 2009) (nonprecedential).

Moreover, while Pena does raise a claim of ineffective assistance of counsel, the claim does not allege ineffectiveness of counsel in explaining the terms of the plea agreement or disclosing the nature and effect of the collateral attack waiver contained therein.  A collateral attack waiver "does not become unenforceable simply because a defendant claims ... ineffective assistance, but only if the record of the criminal proceeding reveal[s] that the claim that the waiver was the result of ineffective assistance of counsel [is] meritorious."  *United States v. Akbar*, 181 F. App'x 283, 286–87 (3d Cir. May 12, 2006).  *See also Walker v. United States*, Civil No. 09–4967 (SDW), 2010 WL 3636244, *4 (D.N.J. Sep. 8, 2010).  As discussed in detail below, Pena's ineffective assistance of counsel claims are without merit and cannot serve as a basis to void the plea agreement.  Accordingly, this Court is satisfied that the record conclusively shows that Pena knowingly and voluntarily waived his right to appeal or collaterally attack his sentence.  This Court further notes that the Third Circuit already has enforced the appellate waiver contained in the same plea agreement.

2. *No Miscarriage of Justice Demonstrated*

Next, this Court considers if enforcement of Pena's waiver will amount to a miscarriage of justice.  The crux of Pena's argument is that the loss amount used by this Court to determine his offense level under the U.S. Sentencing Guidelines was inaccurate.  However, Pena admitted to

the amount of loss at his plea hearing, and did not object to the calculation of loss at his sentencing

hearing.  For instance, at the plea hearing, the following colloquy took place:

> THE COURT: Did you make over one million dollars from the sale of VoIP minutes over the networks of third parties without their consent?
>
> THE DEFENDANT: Your Honor, I know the number was around a million dollars, but I can't tell if it was close to million dollars, that's as much I can tell or recognize.
>
> THE COURT: Okay.  Did you cause over a million dollars in damages to VoIP providers and intermediaries?
>
> THE DEFENDANT: The same answer, your Honor, has to be close to a million dollars. Don't know about the exact figure.
>
> THE COURT: Okay.  I think that's part of his plea agreement, that it's over a million, though, is that not correct, Mr. Kahn?
>
> MR. KAHN: Yes. The Government can prove, and we've discussed this over the course of time, that they'll be able to prove it.  But from his personal knowledge, he wasn't able to say one way or another.
>
> THE COURT: You have no reason to dispute, if the Government says they believe it's over a million dollars, do you have any basis upon which you would dispute that number?
>
> THE DEFENDANT: It's a difficult situation.  They have the evidence, I have no reason to dispute it.

(Plea Tr. at 13:4-14:1.)

The Government also states that it made all information regarding loss amounts available to Pena in the Presentence Investigation Report.  Pena made no challenge to the loss amounts before or during his sentencing.  The amount of loss was calculated at a total of $1,012,133.10, and was detailed in a list attached to the Judgment entered on September 24, 2010.  (*United States v. Pena*, No. 2:09-cr-00103-SDW at ECF No. 30; *see also* Sentence Tr. at 32:1-15.)  Indeed, the estimated loss amount of $1,041,000 was expressly stated in the plea agreement that Pena signed. (ECF No. 12-3, Plea Agreement at 3.)

Moreover, Pena waived his right to a factual inquiry concerning the loss amount or to contest the amount of loss to which he stipulated at the plea hearing when he pled guilty. Pena understood that his guilty plea waived his right to a trial. He also affirmed that he understood he could not renege on his plea if he did not agree with his sentence. (Plea Tr. at 3:25-5:6.) Pena presented no evidence at his plea hearing or his sentence to dispute the Government's loss calculation, and he expressly stipulated that the losses from his offense were close to $1 million. Thus, where Pena did not dispute the loss calculations at his plea hearing or sentencing, he effectively waived any argument that the losses were not the stipulated amount presented by the Government, and he cannot now challenge the loss calculation in a § 2255 motion. *See United States v. Knox,* 624 F.3d 865, 875 (7th Cir. 2010) (finding that petitioner's statements on the record withdrawing objections to loss amounts evinced a knowing waiver as to loss calculation). *See also United States v. Locke*, --- F.3d ----, 2014 WL 3563360, *3 (7th Cir. 2014); *United States v. Winans*, 748 F.3d 268, 272-73 (6th Cir. 2014) (holding that even though the count of wire fraud to which defendant pleaded guilty involved only two victims, the Mandatory Victims Restitution Act (MVRA), 18 U.S.C. § 3663A(a), authorized the sentencing court to order defendant to pay restitution to additional victims of his fraud scheme, since defendant's offense involved as an element a scheme to defraud, and defendant agreed in his plea agreement to pay restitution to every identifiable victim of his offense and all other relevant conduct); *United States v. Rauso*, 548 F.3d 36, 38 (3d Cir. 2013) (holding that defendant's appellate waiver was enforceable where defendant had stipulated to loss amounts in plea agreement, which he later argued were inaccurate); *United States v. Perez*, 514 F.3d 296, 299 (3d Cir. 2007) (holding that restitution order formed a part of the "sentence" subject to waiver of appeal executed by defendant, which precluded appeal from any sentence within Sentencing Guidelines; defendant stipulated to restitution amount in plea

13

agreement, and clearly understood at sentencing hearing that he would be ordered to pay restitution).

The Government further argues that this Court only needed to make a reasonable estimate of the loss. *United States v. Jiminez*, 513 F.3d 62, 85 (3d Cir. 2008). Loss amounts must be established by a preponderance of the evidence. *United States v. Ali*, 508 F.3d 136, 145 (3d Cir.2007). Specifically, § 2B1.1 of the Sentencing Guidelines, at Application Note 3(C), provides that the court "need only make a reasonable estimate of the loss." *See United States v. Green*, 516 F. App'x 113, 132 (3d Cir. 2013). The Third Circuit also has held that "the sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." *United States v. Diallo*, 710 F.3d 147, 150 (3d Cir. 2013) (quoting U.S.S.G. §2B1.1, app. n.3(C)).

In this case prior to sentencing, the Government provided a list of 11 victims with a total loss amount $1,012,311.10. This list was part of Pena's Presentence Investigation Report. Pursuant to Federal Rule of Criminal Procedure 32(i)(3), the district court at sentencing "may accept any undisputed portion of the presentence report as a finding of fact." Fed.R.Crim.P. 32(i)(3)(A). Pena made no objections as to the accuracy of the loss calculations submitted by the Government either before or during his sentencing hearing. Moreover, the total amount was consistent with Pena's stipulation of $ 1 million in losses in the plea agreement and at his plea hearing. Indeed, the relevant conduct that Pena expressly acknowledged in the plea agreement reflected a total loss amount of $1,041,000. (ECF No. 12-3, Plea Agreement at 3.) Quite simply, given Pena's express stipulation to the loss amount in the plea agreement and at his plea hearing, he cannot now assert that it was somehow a disputed fact. Pena agreed that, for purposes of the

14

Sentencing Guidelines, the loss amount was close to $1 million.  Therefore, this Court did not err in accepting the Government's loss calculations at sentencing.

Further, this Court finds that the Government's loss calculations were reasonable even if only three of the eleven victim companies submitted loss reports.  At the sentencing hearing, the Government noted that Pena's offense affected big and small companies, with the small companies "barely able to stay functioning" due to Pena's hacking offense.  (Sentencing Tr. at 17:10-22.)  The Government further states that some of these companies have gone out of business or declined to file a loss claim based on a low expectation of recovering restitution.  (ECF No. 12, Answer at 11.)

Therefore, based on Pena's express stipulation of loss amounts close to $1 million and the Government's loss calculation of $1,012,311.10, which was not disputed by Pena either before or during sentencing, this Court concludes that the loss amount used for sentencing was not erroneous or inaccurate.  Further, coupling Pena's stipulation as to the loss amount provided by the Government in the plea agreement and at the plea hearing, with Pena's knowing and voluntary waiver of his right to bring a § 2255 motion, this Court finds that enforcement of the waiver provision will not work a miscarriage of justice in this case.  Accordingly, Pena's claim for relief is denied.

## B. Ineffective Assistance of Counsel Claim

Pena next asserts that his counsel was ineffective during the plea and sentencing process for failure to verify the actual amount of losses and number of victims claimed by the Government because these factors determined the potential sentence and restitution to be imposed.  (ECF No. 1, Motion at 15-18.)  Pena also contends that his counsel rendered ineffective assistance when he failed to inform Pena of the Government's July 18, 2006 Plea Offer.  (ECF No. 4, Addendum to Motion at 5-10.)

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. VI.  In order to succeed on his claims alleging ineffectiveness of counsel, Pena must satisfy the two prong test of deficient performance and resulting prejudice as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See also Premo v. Moore*, --- U.S. ----, 131 S.Ct. 733, 739, 178 L.Ed.2d. 649 (2011) (holding that "[t]o establish ineffective assistance of counsel, a defendant must show both deficient performance by counsel and prejudice").  First, Pena must show that his counsel's performance (viewed as of the time of counsel's conduct) was inadequate and "fell below an objective standard of reasonableness," in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment."  *Id*. at 687–688.  Petitioner must then show that the deficient performance prejudiced the defense.  In other words, Petitioner must prove that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  *See also Rainey v. Varner*, 603 F.3d 189, 197-98 (3d Cir. 2010).

The U.S. Supreme Court has reiterated that "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Supreme Court has admonished lower courts that the "*Strickland* standard must be applied with scrupulous care...."  *Harrington v. Richter*, --- U.S. ----, ----, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011).  "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence,'" however, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices

16

or most common custom." *Id*. at 788 (quoting *Strickland*, 466 U.S., at 690) (internal citations omitted). In order to pass the prejudice prong, Petitioner must show, with reasonable probability, that but for the counsel's professional incompetence, the outcome of the proceeding would have been different. *Strickland* 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id*. at 693.

As stated above, Petitioner must show both deficiency of performance and prejudice to prevail on an ineffective assistance of counsel claim under *Strickland*. Thus, given the interplay between *Strickland* and § 2255, if Petitioner shows both elements of *Strickland*, he satisfies the requirements of § 2255. *U.S. v. Travillion*, --- F.3d ----, 2014 WL 3029837, * 3 (3d Cir. Jul. 7, 2014). However, in a claim of ineffective assistance of counsel, which has both a deficiency and prejudice prong, the court may address the prejudice prong first "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Id*. at * 4 (citing *Strickland* 466 U.S. at 697).

### 1. *Failure to Inform Pena of July 18, 2006 Plea Offer*

The Supreme Court recently held that a defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Missouri v. Frye*, --- U.S. ----, ----, 132 S.Ct. 1399, 1407–08, 182 L.Ed.2d 379 (2012). Specifically, the Court stated that "[d]efense counsel has a duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id*, 132 S.Ct. at 1408. Thus, failure to convey a plea offer necessarily falls below an objective standard of reasonableness and satisfies the first prong of deficient performance under *Strickland*. *See Frye*, 132 S.Ct. at 1410.

17

To show prejudice from ineffective assistance of counsel due to an uncommunicated plea offer, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.   Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, ... [and that] there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented."   *Frye*, 132 S.Ct. at 1409-10.   The Supreme Court emphasized that this "further showing is of particular importance because a defendant has no right to be offered a plea, *see Weatherford* [*v. Bursey*], 429 U.S. [545], 561 [1977], nor a federal right that the judge accept it. *Frye*, 132 S.Ct. at 1410 (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)).   The Court commented that "in most instances it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain.   The determination that there is or is not a reasonable probability that the outcome of the proceeding would have been different absent counsel's errors can be conducted within that framework."   *Frye*, *supra*.

In this case, the Government argues that Pena's claim rests only on his unsubstantiated allegation that his counsel at the time, Roy Kahn, Esq., failed to inform him of a July 18, 2006 plea offer from the Government, which Pena states he would have accepted.   Although providing no affidavit or certification from Mr. Kahn, the Government contends that Mr. Kahn had informed Pena of the plea offer before Pena fled the country.   Thus, the Government argues, when Pena fled the country, he removed himself from any plea negotiations and cannot establish prejudice.   (ECF No. 12, Answer at 12, 15.)

This Court finds that, even if Pena had not been informed of the July 18, 2006 plea offer, Pena cannot establish the prejudice prong under *Strickland* because his intervening event of flight from this country would have resulted in the Government withdrawing the original plea offer. Indeed, it appears that Pena's own action in fleeing this country caused the plea offer to lapse. Moreover, the record in the criminal matter does not support Pena's contention that he was not informed of plea negotiations.  In particular, the record shows that, on June 29, 2006, Pena appeared before the Honorable Madeline C. Arleo, U.S.M.J., for an initial appearance and bail hearing, and on that same date, an Order to Continue for 90 days was entered for the purpose of the parties to conduct plea negotiations that were then in progress.  (*United States v. Pena*, No. 2:09-cr-00103-SDW at ECF No. 9.)  Pena was released on bond on June 29, 2006, and on August 14, 2006, a warrant was issued for Pena's arrest for breaching the conditions of his release on bail. (*Id*. at ECF No. 11.)  Pena remained at large until he was taken into custody on or about October 16, 2009.  (*Id*. at ECF No. 17.)  Thus, under these circumstances as evidenced by the record, Pena cannot establish by any credible evidence that he would have accepted the original plea offer or that the Government would not have canceled the offer due to his flight from prosecution. Therefore, this Court concludes that Pena has not demonstrated prejudice as required under *Strickland* and *Frye*, and this claim of ineffective assistance of counsel is denied accordingly.

   2.   *Failure to Investigate or Contest Loss Calculations.*

   Pena also contends that his counsel was ineffective because he failed to investigate or contest the loss calculations submitted by the Government.  This Court rejects this claim because Pena himself stipulated to the amount of loss in the plea agreement he signed and at his plea hearing.  Moreover, courts in this Circuit have held that claims of ineffective assistance of counsel at sentencing as opposed to claims that the waiver or plea itself was tainted by ineffective counsel

do not excuse knowing and voluntary waivers of post-conviction rights. *See United States v. Robinson*, Civil No. 04-0884, 2004 WL 1169112, *3-4 (E.D. Pa. Apr. 30, 2004); *see also Johnson v. United States*, Civil No. 12-3917 (DMC), 2013 WL 5411081, *2 (D.N.J. Sep. 26, 2013); *Puff v. United States*, 2012 WL 3229154, *6 (D.N.J. Aug. 6, 2012); *Walker v. United States*, Civil No. 09-4967 (SDW), 2010 WL 3636244, *2-3 (D.N.J. Sep. 8, 2010); *Simon v. United States*, Civil No. 05-5503 (JLL), 2006 WL3534600, *7 (D.N.J. Dec. 7, 2006).  Therefore, where Pena claims that his counsel was ineffective in failing to investigate or contest the loss amounts at sentencing, loss amounts which Pena unambiguously admitted, this claim for relief must be denied.

C.  Challenge to Restitution Order is Invalid Under § 2255

Finally, Pena's challenge to the restitution order is not cognizable under § 2255, and will be dismissed accordingly.  *See Easton v. Williamson*, 267 F. App'x 116, 117-118 (3d Cir. 2008) (citing *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir.1999) (collecting cases)).  *See also United States v. Perez*, 514 F.3d 296, 299 (3d Cir. 2007) (finding that restitution order formed part of the "sentence" subject to the waiver of appeal and collateral attack provisions to which defendant had stipulated in a plea agreement).

## **CERTIFICATE OF APPEALABILITY**

For the reasons discussed above, this Court denies a certificate of appealability because Petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2).  *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

## **<u>CONCLUSION</u>**

For the reasons set forth above, this Court DENIES Petitioner's Motion and DECLINES to issue a certificate of appealability.   An appropriate Order follows.




<u>s/ Susan D. Wigenton, U.S.D.J.</u>
HON. SUSAN D. WIGENTON
United States District Judge